HINES, Appellant,

v.

STATE FARM INSURANCE COMPANY, Appellee.

[Cite as *Hines v. State Farm Ins. Co.* (2001), 146 Ohio App.3d 128.]

Court of Appeals of Ohio,
Seventh District, Belmont County.

No. 00BA3.

Decided Sept. 25, 2001.

130

*Donald E. George,* for appellant.

*Miller & Kyler, L.P.A.,* and *Matthew P. Mullen,* for appellee.

WAITE, Judge.

This timely appeal arises from the trial court's decision to grant appellee's motion for summary judgment on appellant's claim for underinsured motorist coverage. For the following reasons, we affirm the judgment of the trial court.

On September 26, 1997, Rita M. Hines ("appellant") was injured in a multivehicle collision in Bartholemew County, Indiana. The tortfeasor was a Canadian citizen. On September 22, 1998, appellant settled with the tortfeasor's insurer for $75,000 and released the tortfeasor and his insurer from further liability, all

without the notification or consent of State Farm Insurance ("appellee"). Appellee is appellant's underinsured motorist carrier. On January 29, 1999, appellant filed an underinsured motorist claim with appellee. Appellee denied the claim because the insurance contract contained a clause that denied underinsured coverage to "any insured who without [appellee's] written consent settles with any person or organization who may by liable for the bodily injury."

On August 24, 1999, appellant filed a declaratory judgment action to determine whether she was entitled to underinsured motorist coverage under the contract. On September 29, 1999, appellee filed a motion for summary judgment arguing that it was undisputed that appellant settled her claim against the tortfeasor without appellee's consent. Appellee argued that this constituted a breach of the terms for underinsured coverage under the contract and that appellant was therefore not entitled to that coverage. On December 10, 1999, the trial court granted appellee's motion, stating that Ohio law has long recognized the validity of notification and consent clauses as a precondition to provide underinsured motorist coverage.

On January 10, 2000, appellant filed her timely notice of appeal.

Appellant asserts a single assignment of error:

"The trial court erred to the prejudice of appellant by granting summary judgment in favor of appellee when the clause in appellant's insurance policy requiring appellee's consent to settle a claim should be deemed null and void as a matter of public policy."

Appellant notes that the trial court relied on *Bogan v. Progressive Cas. Ins. Co.* (1988), 36 Ohio St.3d 22, 521 N.E.2d 447, for the proposition that an insured has a duty to protect the insurer's right to subrogation and that the failure of the insured to do so results in the right of the insurance company to deny coverage. However, appellant states that the trial court failed to consider *Erie Ins. Co. v. Maxwell* (Sept. 29, 1999), Wayne App. No. 98CA0011, unreported, 1999 WL 771726, which held that if an insured's failure to comply with the terms of the insurance contract did not prejudice the insurer, the insurer may not deny coverage. Appellant asks that this court follow *Erie Ins. Co. v. Maxwell*. We must decline appellant's invitation because *Erie*'s holding is inapplicable to the case at bar.

When an action for a declaratory judgment is disposed of in summary judgment, the proper standard of review is *de novo* under the strictures set forth in Civ.R. 56(C). *King v. W. Res. Group* (1997), 125 Ohio App.3d 1, 5, 707 N.E.2d 947. On appeal of a motion for summary judgment, an appellate court reviews the judgment independently with no deference given to the trial court's decision.

*Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153.

Civ.R. 56(C) states:

"* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor * * *."

In addition, summary judgment under Civ.R. 56 is proper where " '(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds could come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.' " *Welco Industries, Inc. v. Applied Cos.* (1993), 67 Ohio St.3d 344, 346, 617 N.E.2d 1129, quoting *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267.

█ The question raised by appellant's complaint for declaratory judgment is whether she is entitled to underinsured motorist benefits under the terms of her contract. It is not contested that the insurance contract contains a clause stating that there is no underinsured motorist coverage "for any insured who, without [appellee's] written consent, settles with any person or organization who may be liable for the bodily injury." Nor is it contested that appellant settled with and released the tortfeasor and his insurer without appellee's written consent. There is no question that appellant did not comply with the aforementioned provision of the contract. The question of the legality of the notice and consent clause remains.

The Ohio Supreme Court has long recognized an insurer's right to subrogation. *McDonald v. Republic–Franklin Ins. Co.* (1989), 45 Ohio St.3d 27, 29, 543 N.E.2d 456, citing *Newcomb v. Cincinnati Ins. Co.* (1872), 22 Ohio St. 382, 1872 WL 17. Moreover, the Ohio legislature has specifically granted the right of subrogation to providers of uninsured and underinsured motorist coverage in R.C. 3937.18(E). *McDonald* at 29, 543 N.E.2d 456.

A clause in an underinsured motorist policy protecting the insurer's subrogation rights is valid and enforceable and the insurer is not required to consent to a settlement offer that destroys its rights of subrogation. *Id.* at 30, 543 N.E.2d 456; see *Bogan,* 36 Ohio St.3d at 30, 521 N.E.2d 447. While an insurer may protect its right of subrogation by including an appropriate clause in its policy, "such clause does not operate to place the entire burden of protection on the insured. An insurer must aid its insured in the preservation of its subrogation rights." *McDonald, supra,* at 31, 543 N.E.2d 456. However, the Ohio Supreme Court has stated:

"It has been held that '[a]n insured who settles with and releases an underinsured tortfeasor before giving her insurer notice * * * is precluded from bringing an action against her insurer for underinsured motorist benefits.' *Klang v. American Family Ins. Group* (Minn.App.1986), 398 N.W.2d 49, syllabus. We agree that an insured who destroys his insurer's subrogation rights without the insurer's knowledge does so at his peril." *Id.* at 31, 543 N.E.2d 456.

The court continued that "when an insured has given his underinsurance carrier notice of a tentative settlement prior to release, and the insurer has had a reasonable opportunity to protect its subrogation rights by paying the underinsured motorist benefits before the release but does not do so, the release will not preclude recovery of underinsurance benefits." *Id.*

An insured's failure to notify the insurer prior to entering into a settlement and release agreement with the tortfeasor does not necessarily mean that the insured cannot recover uninsured motorist benefits. The function of the notice provision is to allow the insurer to protect its subrogation rights. *Bogan, supra,* at 30, 521 N.E.2d 447. In some cases, a release may not impair or destroy the insurer's subrogation rights. A release does not bar the subrogated underinsured motorist carrier from pursuing its claim if the tortfeasor or its carrier had knowledge of the subrogated claim at the time of the settlement. *Gaier v. Midwestern Group* (1991), 76 Ohio App.3d 334, 338, 601 N.E.2d 624.

"A tortfeasor who settles the claim of a party injured by his act with full awareness of the fact that the claim has been subrogated is liable to the subrogee for the amount paid out by such subrogee." *Hartford Acc. & Indemn. Co. v. Elliott* (1972), 32 Ohio App.2d 281, 61 O.O.2d 346, 290 N.E.2d 919, syllabus. An insured may attempt to prove that, despite a settlement and release agreement, the insurer's subrogation claim has not been impaired because of the tortfeasor's knowledge of the subrogation claim. This argument acts as an affirmative defense to the insured's failure to give prior notice to the insurer of the settlement.

Additionally, the insurer may effectively waive its right to receive prior notice of a settlement agreement. "[W]here an insurer unjustifiably refuses coverage where it was bound by contract to provide it such refusal may operate as an estoppel, waiving the insurer's right to notification of a proposed settlement with the tortfeasor." *Aufdenkamp v. Allstate Ins.* (Jan. 19, 2000), Lorain App. No. 98CA007269, unreported, 2000 WL 59849; see *Bakos v. Insura Prop. & Cas. Ins. Co.* (1997), 125 Ohio App.3d 548, 558, 709 N.E.2d 175.

There is no dispute that appellant failed to give appellee prior notice of the September 22, 1998 settlement and release agreement. Appellant did not provide any evidence in opposition to appellee's motion for summary judgment that can be construed as a defense to its failure to give prior notice of the settlement agreement. Appellant appears to argue that appellee's mere knowledge of the facts of the original accident constitutes a waiver of the notice provisions of the policy. We are not persuaded by this argument.

An insurer should not be required to poke blindly into an insured's affairs in the hopes of uncovering the early stages of a settlement agreement in order to protect its subrogation rights. "Before an injured party notifies his underinsurance carrier of the [settlement] offer, the injured party is the only one in a position to protect or destroy the underinsurer's subrogation rights." *McDonald, supra,* at 31, 543 N.E.2d 456. An insurer's mere knowledge of the underlying facts of an accident has no effect on the insured's duty to carry out the notice provisions of the insurance policy.

Appellant's argument that this court follow *Erie Ins. Co. v. Maxwell* is also unpersuasive. That case involved matters clearly distinguishable from those before this court. In *Erie Ins. Co. v. Maxwell,* the insured was involved in a collision but represented to the insurer that the covered auto was stolen. The insured submitted a claim for the full value of the vehicle. In a declaratory judgment action, the trial court determined that the insured violated the "concealment, fraud or misrepresentation" and "cooperation" clauses of the insurance contract and that the insurer was relieved from any obligations under the policy. The court of appeals reversed, stating that the insured's actions were irrelevant because the "insurance policy covered all perils including collision, theft, and other comprehensive accident events and they gave the insurance company a complete account of the events within a reasonable time, their initial misrepresentation was not material and [the insurer] was not prejudiced thereby." *Id.* at 4. Because *Erie Ins. Co. v. Maxwell* in no way addressed issues of underinsured motorist coverage and notice and consent of the insurer to settle, it is clearly not applicable to the matter *sub judice.*

Appellant's argument that enforcement of the notification clause would force her to litigate the matter in Canada in violation of public policy is also without merit. Appellant has not demonstrated support for this wholly speculative argument. Appellant's argument is undermined by the rationale behind requiring an insured to notify her insurer of proposed settlements. After receiving notice of a settlement offer from a tortfeasor, an insurer can evaluate such factors as the amount of the settlement; the amount of liability insurance remaining, if any; the amount of assets held by the tortfeasor and the likelihood of their recovery via subrogation; the total amount of the insured's damages; and the expenses and risks of litigating the insured's cause of action. *McDonald, supra,* at 31, 543 N.E.2d 456.

After considering the settlement offer and other circumstances, the insurer may follow one of several courses. *Id.* If the insurer determines that recovery of underinsurance benefits it may pay is unlikely, where the liability limits are exhausted or nearly so and the tortfeasor is judgment-proof, it could simply take no action and permit settlement and release. *Id.* The insurer must thereafter process the underinsurance claim but would not be able to recover any payments through subrogation. *Id.* If damages were substantially more than the liability limits and the tortfeasor had substantial assets, the insurer could substitute its payment to the insured in an amount equal to the tentative settlement. *Id.* at 31–32, 543 N.E.2d 456. In this situation, the insurer's payment protects its subrogation rights to the extent of the payment. *Id.* at 32, 543 N.E.2d 456. The insurer would then either have to arbitrate the underinsured claim, attempt to negotiate a better settlement, or proceed to trial in the insured's name. *Id.* It is clear that appellant's mere act of notifying appellee of the pending settlement would not have prejudiced her claim against the tortfeasor or forced further litigation against the tortfeasor.

For all of the foregoing reasons, we overrule appellant's sole assignment of error and affirm the judgment of the trial court.

*Judgment affirmed.*

VUKOVICH, P.J., and DEGENARO, J., concur.