OPINION *Page 2 
{¶ 1} This is a dispute over reimbursement of funds distributed under the medical payments provision of an automobile insurance policy. Appellant Delores K. Macejko owned an automobile insurance policy issued by Appellee Nationwide Insurance Company ("Nationwide"). Her husband, Paul P. Macejko was also insured under the policy. Appellants received $10,000 pursuant to the medical payments section of the policy as a result of injuries sustained during a car accident. Delores signed a subrogation assignment in order to receive payment from Nationwide. Appellants later entered into a $100,000 settlement with the insurance companies of the tortfeasors who caused the accident, Lori Ortiz and Vito Yerapoli. Appellants did not inform Nationwide of the settlement, and Nationwide later demanded repayment of the $10,000. Appellants filed a declaratory judgment action, and Nationwide filed a competing counterclaim based on the insurance contract and subrogation agreement. The Mahoning County Court of Common Pleas granted summary judgment to Nationwide. The record reflects that Appellant Delores K. Macejko signed a subrogation agreement in order to receive her medical payments under the policy, and that Nationwide was not made a party to the settlement agreement between Appellants and the tortfeasors' insurance company. The trial court was correct in ruling in favor of Nationwide. The judgment is affirmed. *Page 3 
 CASE HISTORY {¶ 2} On April 20, 2000, Delores Macejko was involved in a traffic accident in Struthers, Ohio. Appellee Lori Ortiz was driving the other vehicle. Also contributing to the accident was a vehicle that was parked on the sidewalk by Ronald C. Galazia. Mr. Galazia was employed by Vito J. Yerapoli and Crown Music and Vending Co.
 {¶ 3} On May 24, 2000, Delores Macejko signed a proof of claim and subrogation assignment granting her insurer, Appellee Nationwide, subrogation rights over her claim in exchange for payments under the medical pay section of her automobile insurance contract. Nationwide paid Appellants $10,000 under the medical pay section of the policy. The insurance policy itself also states that Nationwide retains the right of subrogation and reimbursement for all payments made pursuant to the medical pay section of the policy.
 {¶ 4} Appellants Paul and Delores Macejko filed a personal injury complaint in the Mahoning County Court of Common Pleas on December 4, 2000. Lori Ortiz, Ronald Galazia, Vito Yerapoli, and Crown Music were all named as defendants. A jury trial was scheduled. On July 1, 2003, the parties notified the court that a settlement had been reached. At this point in the proceedings, Nationwide was not a party to the case. On July 29, 2003, a stipulation for dismissal was filed, indicating that the case had been settled and should be dismissed. The record reflects that Appellants signed two separate releases, one to Lori Ortiz and one to Vito Yerapoli, as part of the settlement. There is no indication in the record that Appellants *Page 4 
informed Nationwide of the settlement proceedings, or that Nationwide was involved in the settlement process in any way.
 {¶ 5} On May 19, 2004, Appellees Lori Ortiz and Vito Yerapoli filed a motion to enforce the settlement. The motion stated that Appellants were paid $100,000 in the settlement. The motion stated that Nationwide was now making a subrogation claim for $10,000 against Ortiz and Yerapoli. The motion stated that as a part of the settlement, Appellants agreed to pay all medical expense liens and subrogation claims arising out of the accident.
 {¶ 6} On December 2, 2004, Appellants filed an additional claim for declaratory judgment in this case, with Nationwide as the defendant. In the complaint, Appellants acknowledged that they were insured by Nationwide and that Nationwide had paid $10,000 under the medical pay section of the policy. They also alleged that they had no prior knowledge of any subrogation interest asserted by Nationwide. Nationwide subsequently filed counterclaims against Appellants and against Lori Ortiz and Vito Yerapoli in order to recover the $10,000 it had paid to Delores Macejko.
 {¶ 7} On July 3, 2005, the parties filed stipulations as to all the material facts of this case, including the following: Delores Macejko signed a proof of claim and subrogation assignment in favor of Nationwide; Nationwide paid $10,000 of reasonable medical bills under its policy with the Macejkos; Nationwide put Lori Ortiz's insurer, Progressive Insurance Co., on notice of its subrogation claim prior to the settlement; Nationwide submitted its subrogation claim to an arbitration forum *Page 5 
including Appellants and Progressive Insurance Co.; Appellants did not obtain Nationwide's approval to enter into the settlement; and Appellants signed releases as part of the settlement agreeing to pay all medical expenses, liens and claims of subrogation arising from the accident.
 {¶ 8} On July 18, 2005, Nationwide filed a motion for summary judgment. On August 5, 2005, Lori Ortiz filed another motion to enforce the settlement. On August 10, Vito Yerapoli filed a motion for summary judgment, also seeking to enforce the settlement agreement. Appellants filed a separate cross-motion for summary judgment. In Appellants' cross-motion for summary judgment they argued that Nationwide did not inform them of any subrogation rights, and that Nationwide failed to preserve its subrogation rights by neglecting to join the personal injury lawsuit initiated by Appellants. On June 21, 2006, a magistrate granted Nationwide's and Yerapoli's motions for summary judgment, and Ortiz's motion to enforce settlement. Objections were filed, but the trial court overruled the objections and adopted the magistrate's decision on September 15, 2006. This timely appeal was filed on October 12, 2006.
 ASSIGNMENT OF ERROR {¶ 9} "THE TRIAL COURT COMMITTED ERROR IN SUSTAINING THE MOTIONS OF DEFENDANT NATIONWIDE INSURANCE COMPANY AND VITO YERAPOLI FOR SUMMARY JUDGMENT AND THE MOTION OF DEFENDANT LORI ORTIZ TO ENFORCE SETTLEMENT, AND IN DENYING THE CROSS MOTION OF PLAINTIFFS FOR SUMMARY JUDGMENT." *Page 6 
 {¶ 10} Appellants argue that the insurance policy issued by Nationwide does not contain any specific provision requiring them to repay benefits they received under the medical pay section of the policy. Furthermore, according to their reading of the release and subrogation assignment that Delores Macejko signed, Appellants only agreed that Nationwide would have the right to sue the tortfeasors to the same extent that Appellants had a right to sue. Appellants state that Nationwide did not attempt to sue the tortfeasors or their insurance companies before Appellants entered into the settlement agreement with the tortfeasors. Appellants acknowledge that Nationwide did attempt to pursue arbitration with Lori Ortiz's insurance carrier, but they claim that they were not parties to that action and were not notified of it. Appellants contend that it was Nationwide's responsibility to protect its own interests. Appellants thus conclude that it was Nationwide's own failure to act upon its subrogation rights that destroyed those rights.
 {¶ 11} This is primarily a contract dispute. The construction and interpretation of a contract are matters of law that are reviewed de novo on appeal. Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241, 374 N.E.2d 146, paragraph one of the syllabus. Contractual subrogation rights are governed by the principles of contract law.Nationwide Mut. Fire Ins. Co. v. Sonitrol, Inc. of Cleveland (1996),109 Ohio App.3d 474, 482, 672 N.E.2d 687. Words in an insurance policy must be given their plain and ordinary meaning. Erie Ins. Co. v.Kaltenbach (1998), 130 Ohio App.3d 542, 546, 720 N.E.2d 597. *Page 7 
 {¶ 12} The insurance contract that Appellants entered into with Nationwide states that Nationwide has the right of subrogation under the medical payments provisions of the policy. The policy further defines what is meant by a right of subrogation:
 {¶ 13} "This means that after paying a loss to you or others under this policy, we will have the insured's right to sue for or otherwise recover such loss from anyone else who may be liable. Also, we may require reimbursement from the insured out of any settlement or judgment that duplicates our payments. These provisions will be applied in accordance with state law. Any insured will sign such papers, and do whatever else is necessary, to transfer these rights to us, and will do nothing to prejudice them." (Policy, p. 17.)
 {¶ 14} Nationwide further protected its rights by having Delores Macejko sign a proof of claim and subrogation assignment prior to distributing funds to her under the medical payments section of the policy. The proof of claim states:
 {¶ 15} "I hereby assign and transfer to the Company each and all claims and demands against any person, persons, firm or corporation arising from or connected with such loss or damage to the extent of the amount paid. The undersigned further states that no monies have been paid to him by the party at fault and that he has executed no release of his claim against such party and that he will assist the Company in the prosecution of such claim and will execute any and all papers necessary in effecting recovery." (5/24/2000 Proof of Claim.) *Page 8 
 {¶ 16} The plain language of these contractual provisions provides that Appellants agreed to reimburse Nationwide out of any settlement proceeds, that Nationwide had a claim against anyone liable to Appellants that might arise out of the accident, that Appellants were required to assist Nationwide in protecting its subrogation claim, and that Appellants agreed they would do nothing to prejudice those subrogation rights. Since Nationwide had a contractual right to reimbursement directly from Appellants, there was no particular reason for it to intervene in the lawsuit initiated by Appellants. Furthermore, Appellants had agreed to assist Nationwide in preserving its subrogation rights. Both the insurance policy and the proof of claim agreement contain clauses requiring Appellants to cooperate with Nationwide to preserve its subrogation rights, and to do nothing to injure those rights. By entering into a settlement agreement without informing Nationwide, Appellants effectively destroyed those subrogation rights.
 {¶ 17} It is worth noting that the cooperation clauses found in the insurance policy and the proof of claim are fully enforceable contract provisions, and violation of a cooperation clause may relieve the insurer of any liability to pay benefits under the policy. Gabor v.State Farm Mut. Auto. Ins. Co. (1990), 66 App.3d 141, 143,583 N.E.2d 1041. Thus, even if the insurance policy did not contain a clause giving Nationwide the right to reimbursement, it would still be entitled to reimbursement due to Appellants' violation of the cooperation clauses.
 {¶ 18} In this case, as in most automobile accident cases, the tortfeasors' insurer made a settlement offer within the policy limits in order to dispose of the *Page 9 
claim. That offer was conditioned upon a general release of all claims, including any subrogation claims, against the tortfeasors. By accepting the settlement offer, Appellants completely nullified Nationwide's subrogation rights. As the Ohio Supreme Court has stated, "an insured who destroys his insurer's subrogation rights without the insurer's knowledge does so at his peril." McDonald v. Republic-Franklin Ins.Co. (1989), 45 Ohio St.3d 27, 31, 543 N.E.2d 456.
 {¶ 19} As we have previously opined:
 {¶ 20} "An insurer should not be required to poke blindly into an insured's affairs in the hopes of uncovering the early stages of a settlement agreement in order to protect its subrogation rights. * * * An insurer's mere knowledge of the underlying facts of an accident has no effect on the insured's duty to carry out the notice provisions of the insurance policy." Hines v. State Farm Ins. Co. (2001),146 Ohio App.3d 128, 134, 765 N.E.2d 414.
 {¶ 21} In the same Hines opinion, we went on to hold:
 {¶ 22} "There is no dispute that appellant [the insured] failed to give appellee [the insurance company] prior notice of the September 22, 1998 settlement and release agreement. Appellant did not provide any evidence in opposition to appellee's motion for summary judgment that can be construed as a defense to its failure to give prior notice of the settlement agreement. Appellant appears to argue that appellee's mere knowledge of the facts of the original accident constitutes a waiver of the notice provisions of the policy. We are not persuaded by this argument." Id. *Page 10 
 {¶ 23} Just as in Hines, there is no dispute about Appellants' failure to notify Nationwide of any settlement talks or that settlement had been reached. Appellants contend that it was Nationwide's responsibility to find out about the settlement and to prevent Appellants from destroying Nationwide's rights. Appellants appear to be reading the insurance contract and the proof of claim agreement to contain some type of presumption that the parties would act in bad faith with each other, or act adversely to each other's interests, rather than as an acknowledgement that they were required to act cooperatively and in good faith in order to help preserve each others' rights. It is well-established that, "every contract contain[s] an implied duty for the parties to act in good faith and to deal fairly with each other."Littlejohn v. Parrish (2005), 163 Ohio App.3d 456, 2005-Ohio-4850,839 N.E.2d 49, ¶ 27. In this case, the duty to act in good faith and deal fairly was not merely implied. The insurance policy and the proof of claim expressly required Appellants to assist Nationwide in preserving its rights. Appellants failed to act accordingly.
 {¶ 24} Appellants also argue that the releases they signed in favor of Lori Ortiz, Vito Yerapoli, and their insurers, contained boilerplate language that cannot be enforced. Appellants make a similar claim as to the content of the Nationwide insurance policy and the proof of claim that Delores Macejko signed. Appellants argue that they were not notified, or were somehow blindsided, by Nationwide's claim for reimbursement of the $10,000, even though likelihood of such a reimbursement claim is clearly laid out in the insurance policy and the proof of claim. Although Appellants may have chosen to ignore the plain language of both documents, the *Page 11 
very language of the contracts put them on notice of Nationwide's claim. The law presumes a person has read and understood legal documents he or she has signed. ABM Farms, Inc. v. Woods (1998), 81 Ohio St.3d 498, 503,692 N.E.2d 574. "A person of ordinary mind cannot be heard to say that he was misled into signing a paper which was different from what he intended, when he could have known the truth by merely looking when he signed." McAdams v. McAdams (1909), 80 Ohio St. 232, 240-241,88 N.E. 542.
 {¶ 25} Appellants appear to argue for the first time that they made a unilateral mistake in signing the settlement agreement and releases, and that the settlement and releases should be voided. "[I]t is well established in Ohio that relief for a unilateral mistake of material fact will not be provided where such mistake is the result of the negligence of the party seeking relief." (Emphasis in original.)Marshall v. Beach (2001), 143 Ohio App.3d 432, 437, 758 N.E.2d 247. The mistake that Appellants rely on is one of their own making. The mistake could have been avoided had they simply looked at the Nationwide insurance policy or at the proof of claim that enabled Delores Macejko to receive medical payment benefits from Nationwide.
 {¶ 26} Appellants' fundamental presumption in this appeal is that Nationwide was required to initiate a separate claim or lawsuit against the tortfeasors in order to preserve its subrogation and reimbursement rights. This is a false presumption. Here, the insurance contract gave Nationwide the right of subrogation and reimbursement of the funds it had paid under the medical payments section of the policy. When an insurance contract conditions the insured's right to benefits to the *Page 12 
insurer's right to reimbursement and subrogation, the, "right of an insured in such a situation to retain the total sum recovered from the tortfeasor is not an unqualified right." Risner v. Erie Ins. Co. (1993),91 Ohio App.3d 695, 699, 633 N.E.2d 588.
 {¶ 27} The Ohio Supreme Court has held that, "where the policy subrogation provisions and the subrogation assignment to the insurer convey all right of recovery against any third-party wrongdoer to the extent of the payment by the insurer to the insured, the insurer, who has cooperated and assisted in proceedings against the wrongdoer, is entitled to be indemnified first out of the proceeds of any recovery against the wrongdoer." Peterson v. Ohio Farmer's Ins. Co. (1963),175 Ohio St. 34, 38, 23 O.O.2d 311, 191 N.E.2d 157. Cooperation, in this context though, does not mean that the insurance company must pursue its own separate claim in court. The Ohio Supreme Court, in a case subsequent to Peterson, held that "cooperation" simply means that the insurance company must respond to notices or demands from the insured.Ervin v. Garner (1971), 25 Ohio St.2d 231, 238, 267 N.E.2d 769.Ervin goes on to state:
 {¶ 28} "This view does not exhibit a lack of concern over a possible windfall to the insurer who sits back and allows the insured to pursue the action against the tortfeasor. Obviously that could happen, but such a result should not be characterized as unfair if it is in accordance with the provisions of the policy as sold. The insured knew, or should have known, when he bought the policy that in case of any payment he would be required to assign `all right of recovery against any party for loss to the extent that payment * * * is made * * *.'" Id. at 237-238,267 N.E.2d 769. *Page 13 
 {¶ 29} The Ervin case considered and rejected the very argument that Appellants now urge us to accept.
 {¶ 30} The record in this matter does not provide any evidence that Nationwide failed to cooperate with respect to its subrogation and reimbursement rights. The record shows that Nationwide was in regular contact with various parties involved in the lawsuit and was involved in active arbitration proceedings up until the point that Appellants unilaterally settled with the defendants. It cannot be construed that Nationwide was being uncooperative because it sought relief through arbitration rather than through adversarial judicial proceedings.
 {¶ 31} Because there are valid contractual provisions prohibiting Appellants from destroying Nationwide's subrogation rights, and since it is clear that Nationwide retained a right of reimbursement for payments made to Appellants, the trial court was correct in granting summary judgment to Nationwide, Yerapoli and Ortiz. The judgment of the trial court is affirmed in full.
 Vukovich, J., concurs. DeGenaro, P.J., concurs. *Page 1