William H. MODROK, Appellant,

v.

Lynwood R. MARSHALL and Mollie M. Marshall, Appellees.

No. 1971.

Supreme Court of Alaska.

Feb. 25, 1974.

On Rehearing June 5, 1974.

Edgar Paul Boyko, of Edgar Paul Boyko & Associates, Anchorage, for appellant.

Harold W. Tobey, Anchorage, for appellee.

Before RABINOWITZ, C. J., and CONNOR, ERWIN and FITZGERALD, JJ.

## OPINION

ERWIN, Justice.

This appeal challenges a judgment dispossessing the appellant, William H. Modrok, of his former residence.

Modrok was divorced from his wife in 1971. The decree awarded his spouse $14,525.00 to be derived from proceeds of the sale of their Anchorage home. No sale occurred until 1973 when Modrok was ordered to show cause why he should not be held in contempt for failure to sell the house. The contempt hearing, held on February 28, 1973, produced a stipulation that Modrok's interest in the property would be quitclaimed to his former spouse if no sale occurred within thirty days. To this end, Modrok executed a statutory quitclaim deed; but within thirty days following, no sale took place. On April 3, 1973, Modrok's former wife executed a warranty deed to Lynwood and Mollie Marshall, the appellees, in exchange for $41,730.00. Mrs. Modrok received the money due her from the divorce property settlement after encumbrances on the property and fees were paid, and Modrok was left with less than $300.00. When Modrok refused to vacate the residence, Mr. and Mrs. Marshall brought an action for forcible detainer. The superior court found them entitled to immediate possession of the premises, and Modrok has appealed.

A suit for forcible detainer under Alaska statutes[1] substitutes the authority of the courts for private force to compel a

1. AS 09.45.060–09.45.160. Sections pertinent to this appeal are

09.45.070. *Action for forcible entry or detention.* (a) When a forcible entry is made upon a premises, or when an entry is made in a peaceable manner and the possession is held by force, the person entitled to the premises may maintain an action to recover the possession.

*     *     *     *     *

09.45.090. *Unlawful holding by force.* The following are cases of unlawful holding by force within the meaning of §§ 60–160 of this chapter:

(1) when the tenant or person in possession of a premises fails or refuses to pay the rent due on the lease or agreement under which he holds, or deliver up the possession of the premises for 10 days after demand made in writing for the possession;

(2) when, after a notice to quit as provided in §§ 60–160 of this chapter, a person continues in the possession of the premises at the expiration of the time limited in the lease or agreement under which that person holds, or contrary to a condition or covenant in the lease or agreement, or without a written lease or agreement;

(3) when, after a notice to terminate the tenancy as provided in this title with reference to termination of estate at will or by sufferance, a person continues in possession of the premises after expiration of the time for determining the tenancy.

*     *     *     *     *

09.45.150. *Inquiry into merits of title.* In an action to recover the possession on the land, tenement, or other real property where the entry is forcible or when the possession is unlawfully held by force, there shall be no inquiry into the merits of the title. Three years' quiet possession of the premises immediately preceding the commencement of the action by the party in possession on those under whom he holds may be pleaded in bar thereof unless the estate of the party in the premises is ended.

citizen wrongfully in possession of real property to surrender it to another with a superior claim. It is well-settled that where title to the property is in dispute, dispossession by this summary procedure may not be ordered. Instead, the plaintiff must establish his paramount title in an action for ejectment.[2]

Modrok's central position is that his claim of fraud involving execution of the quitclaim deed to his former spouse, from whom the Marshalls purchased the property, puts title in issue and renders the forcible detainer statute inapplicable. The proper procedure, in his view, is to adjudicate the question: who holds title to the residence? Modrok also claims that plaintiffs' failure to ever occupy the property as well as his quiet possession for more than three years bar this suit.

The Marshalls reply that they hold title under a warranty deed from Mrs. Modrok and are entitled to the law's customary protection of a bona fide purchaser for value without notice. In this status, they would be immune to any equitable claims, such as fraud in procuring the quitclaim deed, which Modrok might be able to assert against his former wife; accordingly, they may dispossess Modrok in an action for forcible detainer.

It is not disputed the Marshalls were aware through their agent, real estate salesman Richard R. Tast, that the property had been involved in divorce litigation and that Modrok remained in possession. In addition, the purchase price was $41,730.00, considerably below the appellant's appraisal of $58,065.00. These facts, Modrok argues, make it impossible for the

Marshalls to claim the protected status of bona fide purchasers.

It is a settled rule of property that circumstances such as these, which suggest outstanding equities in third parties, impose a duty upon the purchaser to make a reasonable investigation into the existence of a claim.[3] Given suspicious facts, the status of bona fide purchaser turns upon whether there was a prudent inquiry into their import. In purchasing the residence, the Marshalls had a duty to look beyond their chain of title because Modrok's continued possession of the dwelling after he had deeded out his interest was sufficient by itself to put reasonable buyers to inquiry.[4]

Tast testified that he had demanded evidence of Mrs. Modrok's title to the residence. Her attorney provided a copy of the appellant's quitclaim deed and an explanation of the circumstances in which he promised to dispose of or quitclaim the property. The record discloses that Tast attempted to call Modrok and his attorney several times. On the one occasion he was able to reach Modrok's attorney, Tast was given an explanation of the divorce settlement consistent with what he had learned from Mrs. Modrok's attorney. Finally, Tast testified that he went to the property but that Modrok was not at home.

We believe the Marshalls, through their agent, carried out a prudent inquiry into the existence of the appellant's alleged equities. They obtained an explanation of the divorce settlement from Modrok's attorney which accorded with the existence of a valid quitclaim deed to his former wife. Their agent made repeated efforts

2. Miners' & Merchants' Bank v. Brice, 5 Alaska 418, 419 (D.Alaska 1915); Steil v. Dessmore, 3 Alaska 392, 399 (D.Alaska 1907). *Compare* AS 09.45.060 *with* AS 09.-45.630. Where the plaintiff is in possession, he may free himself of claims by others to the property through an action to determine an adverse claim. AS 09.45.010; *see* Elbing v. Hastings, 3 Alaska 125 (D.Alaska 1906).

3. *See, e. g.,* Whitehead v. Foxhill, 105 F. Supp. 966, 968, 13 Alaska 726, 728 (D.

Alaska 1952) (possession by other than record owner); Rabbit v. Atkinson, 44 Cal.App.2d 752, 113 P.2d 14, 17 (1941) (purchase price substantially below fair market value).

4. *E. g.,* Natural Resources, Inc. v. Wineberg, 349 F.2d 685, 689–690 (9th Cir. 1965), cert. denied, 382 U.S. 1010, 86 S.Ct. 617, 15 L.Ed. 2d 525 (1966); Whitehead v. Foxhill, 105 F.Supp. 966, 968, 13 Alaska 726, 728 (D. Alaska 1952); Webb v. Stewart, 255 Or. 523, 469 P.2d 609, 615–616 (1970).

to telephone Modrok, going to the premises once. Under the circumstances, we agree with the superior court that the Marshalls were not chargeable with notice of a possible claim of fraud by the appellant against their grantor.

If, as Modrok argues, the quitclaim deed was obtained "as a result of fraud and misrepresentation" on the part of his former wife,[5] his claim must be against her and not against the Marshalls.

■ The appellant also contends that the statutory action of forcible detainer cannot be invoked where the plaintiffs have never occupied the contested property or the defendant has been in possession for more than three years. These positions are untenable. AS 09.45.070(a) recognizes a cause of action where, without entry by force, one in quiet possession withholds property from another entitled to possession after a demand to relinquish it.[6] It is not essential that the person alleging the detainer ever have been in possession of the premises.[7]

AS 09.45.150 allows the party in possession, or those under whom he holds, to plead "three years' quiet possession of the premises immediately preceding the commencement of the action" as a bar to summary dispossession for unlawful detainer; but this may not be asserted where "the estate of the party in the premises is ended."[8] Modrok executed a quitclaim deed to his former spouse and then failed to sell the property within thirty days. At the close of this period, under the terms of their stipulation, Modrok no longer held an interest in the property. His "estate in the premises . . . ended", AS 09.45.150 does not protect him.

Under our statutes, an appeal from a judgment restoring real property to a plaintiff entitled to possession must be secured by a bond equal to "twice the rental value of the real property . . . from the rendition of the judgment until final judgment in the action . . . ." AS 09.45.080. At the conclusion of the trial, the superior court determined that an appeal would consume one year and that the rental value of the property for this period would be $4,500.00. Accordingly, Modrok was ordered to post a bond in the amount of $9,000.00.[9] Upon issuance of our mandate in this appeal, the Marshalls will be entitled to that portion of the bond equal to twice the rental value of the property from the date of judgment below to the date of our mandate.

5. We have difficulty discerning the substance of this fraud. The appellant argues that

> he had been directed by the court in a pending divorce proceeding between him and his wife, Mildred Modrok, to execute such a quitclaim deed, merely as security for his wife's interest in the proceeds of the sale of the family residence, out of the proceeds of which he was required by the terms of an order entered in the divorce case to pay the sum of $14,525.00.

Apparently, the fraud lay in his former spouse's effort to have a court order Modrok to sell or convey to her the property in satisfaction of his obligations under the divorce decree. The record of the contempt hearing is unambiguous that Modrok agreed to sell the property or relinquish all claim of title in favor of his former wife at the end of thirty days. There is no suggestion that the deed was executed "merely as security for his wife's interest in the proceeds of the sale . . . ." When Modrok failed to sell within thirty days, his former spouse, under the terms of their agreement, held title and was free to convey the property.

6. *Compare* AS 09.45.070(a) which states: When a forcible entry is made upon a premises, or when an entry is made in a peaceable manner and the possession is held by force, *the person entitled to the premises may maintain an action to recover the possession.* (emphasis added) *with* Schroeder v. Woody, 166 Or. 93, 109 P. 2d 597, 598–599 (1941).

7. *See* West Side Trust & Savings Bank v. Lopoten, 358 Ill. 631, 193 N.E. 462, 465 (1934).

8. See note 1, *supra.*

9. However, the court's formal Findings of Fact recite $9,000.00 as the annual rental value. We believe this disparity to be the consequence of a simple oversight on the part of the Marshalls' attorney. Because the bond was correctly undertaken for $9,000.00, the typographical error has no effect upon this appeal.

We affirm the judgment of the superior court and remand the case for determination of the amount of the bond due the appellees.

BOOCHEVER, J., not participating.

## OPINION ON REHEARING

ERWIN, Justice.

This court rendered a decision favorable to Lynwood and Mollie Marshall, appellees, on February 25, 1974, as Opinion No. 1002. The appellant, William Modrok, filed this petition for rehearing on March 7, 1974,[1] arguing in effect that we misapplied a controlling statute.[2]

Modrok objects to the portion of our decision which, after holding that he had been lawfully dispossessed in an action for forcible detained, awarded twice the rental value of the property he occupied over the period of the appeal to the prevailing party, the Marshalls. The award is to be taken out of a bond in the amount of twice the rental value over this period which AS 09.45.080 required Modrok to undertake as a condition of his appeal.[3] Modrok argues that the statute does not entitle the prevailing party to twice the rental value. In addition, he contends that an interpretation requiring double payment would violate constitutional guarantees of equal protection and due process of law.

The United States Supreme Court has held that requiring a forcible entry and detainer defendant to post a bond equal to twice the rental value of the property as a condition to appeal of an adverse judgment is a denial of equal protection. Lindsey v. Normet, 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed. 2d 36 (1972).[4] The court reasoned:

> It cannot be denied that the double-bond requirement heavily burdens the statutory right of [a forcible entry and detainer] defendant to appeal. While a State may properly take steps to insure that an appellant post adequate security before an appeal to preserve the property at issue, to guard a damage award already made, or to insure a landlord against loss of rent if the tenant remains in possession, the double-bond requirement here does not effectuate these purposes since it is unrelated to actual rent accrued or to specific damage sustained by the landlord.

.    .    .    .    .    .

1. Alaska R.App.P. 27(b) states that the petition "must be filed within ten (10) days after judgment."

2. Alaska R.App.P. 27(a) allows a rehearing if, among other grounds,
   (1) The court has overlooked, misapplied or failed to consider a statute, decision or principle directly controlling  .  .  .  .

3. The statute reads:
   *Undertaking on appeal.* If judgment is rendered against the defendant for the restitution of the real property described in the complaint or any part of it, no appeal may be taken by the defendant from the judgment until he gives, in addition to an undertaking required upon appeal, an undertaking to the adverse party with two sureties. *The sureties shall justify,* in the manner as bail upon arrest, *for the payment to the plaintiff of twice the rental value of the real property of which restitution shall be adjudged from the rendition of the judgment until final judgment in the action, if the judgment is affirmed upon appeal.* (emphasis added)

4. The Court struck down Ore.Rev.Stat. § 105.160 which reads:

   § 105.160. Additional undertaking on appeal. If judgment is rendered against the defendant for the restitution of the real property described in the complaint, or any part thereof, no appeal shall be taken by the defendant from the judgment until he gives, in addition to the undertaking now required by law upon appeal, an undertaking to the adverse party, with two sureties, who shall justify in like manner as bail upon arrest, for the payment to the plaintiff if the judgment is affirmed on appeal of twice the rental value of the real property of which restitution is adjudged from the commencement of the action in which the judgment was rendered until final judgment in the action.

   This statute is nearly identical to AS 09.45.080. *Compare* note 3 *supra.* The Oregon statute became the law of the Territory of Alaska by Act of Congress in 1884. Ch. 53, § 7, 23 Stat. 25–26 (1884). The minor differences in language appear to derive from redrafting by Senator Carter when the territorial provision was compiled as Carter's Ann.Alaska Codes § 1024. See the notes of the Senator in Carter's Ann.Alaska Codes at xviii (1907).

[The State] has automatically doubled the stakes when a tenant seeks to appeal an adverse judgment in [a forcible entry and detainer] action. The discrimination against the poor, who could pay their rent pending an appeal but cannot post the double bond, is particularly obvious. For them, as a practical matter, appeal is foreclosed, no matter how meritorious their case may be. The non-indigent [forcible entry and detainer] appellant also is confronted by a substantial barrier to appeal faced by no other civil litigant in Oregon. The discrimination against the class of [forcible entry and detainer] appellants is arbitrary and irrational, and the double-bond requirement . . . violates the Equal Protection Clause. 405 U.S. at 78–79, 92 S.Ct. at 876, 31 L.Ed.2d at 53–54.

The precise issue in *Lindsey* was the validity of the double bond, but, under the decision, payment of double the rent upon affirmance of the appealed judgment is also foreclosed. Both parties urge us to avoid a constitutional ruling by construing the statute to not demand a double award or to require only payment of reasonable rentals and costs. However, a plain reading permits no other conclusion than that double payment is required, because the statute creates, with affirmance of the judgment below, a duty on the bond sureties to pay twice the rental value over the period of the appeal.[5]

■■ We therefore hold that by commanding payment of twice the rental value of property occupied by a defendant appealing an adverse judgment in a forcible entry and detainer action AS 09.45.080 violates the equal protection guarantees of the United States and Alaska Constitutions.[6] The state may protect a property owner against loss during an appeal by requiring an appeal bond and payment on affirmance which are related to actual rent accrued or specific damage suffered. An automatic doubling of the rental over the period of the appeal, however, is not reasonably tailored to achieve these ends.

Throughout his appeal and this rehearing, Modrok has made no objection to the requirement that a double bond be posted as a condition to the appeal. Because that issue has not been raised, we limit our ruling in this case to the double payment provisions of AS 09.45.080. Our decision in Opinion No. 1002 is modified, and the case is remanded to the superior court for a determination of the amount owing to the appellees to be deducted from the bond previously filed in this appeal.

---

5. The Oregon Supreme Court held that Ore. Rev.Stat. § 105.160 required double payment. Scales v. Spencer, 246 Or. 111, 424 P.2d 242, 243 (1967).

6. U.S.Const. amend. XIV; Alaska Const. art. 1, § 1.