*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| KRISTER EVERTSON, f/k/a Kris Eriksson, | ) ) ) | Supreme Court No. S-17791 |
| Appellant, | ) ) ) | Superior Court No. 3PA-18-02570 CI |
| v. | ) ) | O P I N I O N |
| LILLIAN ERIKSSON SIBLEY, f/k/a Lillian K. Eriksson-Hebdon and Lillian K. Hebdon; LILLIAN K. HEBDON LIVING TRUST; FIRST NATIONAL BANK ALASKA; and MAT-SU TITLE AGENCY LLC, | ) ) ) ) ) ) ) ) | No. 7632 – November 18, 2022 |
| Appellees. | ) ) ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Jonathan A. Woodman, Judge.

Appearances: Krister Evertson, pro se, Wasilla, Appellant. Anna C. Crary and Bruce A. Moore, Landye Bennett Blumstein LLP, Anchorage, for Appellees.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

MAASSEN, Justice.

## I. INTRODUCTION

A mother, son, and daughter conveyed real property among themselves by

competing deeds. The daughter used the property as security for two bank loans and defaulted on the second one; when the bank attempted foreclosure, the son, claiming to be the property's owner, brought suit against the bank on a constructive notice theory, also alleging that the daughter's deed to the property was void because of fraud. The superior court found that the bank lacked notice of the son's alleged adverse interest and granted it summary judgment as a bona fide lender. The court also dismissed the fraud claim.

The son appeals. We affirm the grant of summary judgment on the bank's bona fide lender status, but we remand for a determination of whether the daughter acquired her deed as a result of fraud in the factum, which, if proven, would render her title and the bank's mortgage interest void.

## II.     FACTS AND PROCEEDINGS

### A.     Facts

This appeal concerns competing claims to a tract of real property in Wasilla. In January 2004 the owner, Krister Evertson, conveyed the property to his mother, Karin Eriksson, by a quitclaim deed he recorded in June. In August Karin conveyed the property back to Krister,[1] but the deed memorializing this reconveyance was not recorded until October 2011, over seven years later.

In the meantime, in April 2008, Karin executed another quitclaim deed conveying the same property to her daughter Lillian Sibley, Krister's sister. The dispute here is focused in part on the circumstances of that conveyance. Krister asserts that "Lillian obtained title through fraud" because she "exercised undue influence and fraudulently caused Karin to sign [the] Quitclaim Deed." He asserts that Karin had been

---

[1]     Given the different surnames by which Krister and his sister have been known, we use the family members' first names for the sake of clarity; we intend no disrespect.

diagnosed with dementia and was "incapable of comprehending the nature or impact of the document" she was signing.

The quitclaim deed from Karin to Lillian was recorded one day after it was signed. A little over a week later, on April 30, 2008, Lillian pledged the property to First National Bank of Alaska (FNBA) as collateral to secure a $120,000 loan. The deed of trust was recorded on May 1.

On May 8 Krister signed another quitclaim deed to the property. This deed purported to transfer the property from himself and Karin to "Denali Trust." Krister admits that no trust with that name was actually created, and that Denali Trust was a fictional entity he "envisioned . . . as a way to help protect [his] mother . . . against fraud." He nonetheless recorded the deed to Denali Trust on May 20, 2008.

Lillian paid off her first FNBA loan in 2010 and a few months later entered into another loan agreement with FNBA for $200,000, again secured by a deed of trust on the property. This deed of trust was recorded in October 2010. In October 2011 Krister recorded the 2004 deed reflecting Karin's conveyance of the property to him.

Sometime around April 2018, Lillian defaulted on her second FNBA loan, and the bank prepared for a non-judicial foreclosure sale. Krister asserts that he was living on the property and taking care of Karin at the time.

B.    Proceedings

In September 2018 the Alaska Office of Elder Fraud and Assistance filed a complaint against Lillian alleging that she had "committed Elder Fraud as defined in AS 44.21.415(g)(1)(C)[2] by causing [Karin] to sign a Quitclaim Deed," had failed to tender consideration for the deed, and had breached a duty of good faith and fair

---

[2]    AS 44.21.415(g)(1)(C) defines fraud as "exploitation of another person or another person's resources for personal profit or advantage with no significant benefit accruing to the person who is exploited."

dealing.[3] Two months later Krister recorded a lis pendens against the property and filed his own complaint against Lillian and FNBA, alleging that he had title to the property through adverse possession.[4] FNBA moved for summary judgment; it argued that Krister's adverse possession claim failed because his attempted conveyance to the admittedly fictional Denali Trust precluded him from asserting a good faith claim to title.

Krister moved for leave to file an amended complaint containing three claims: (1) that Lillian had committed "fraud in the factum," a type of fraud that generally involves obtaining a person's signature through trickery;[5] (2) that FNBA had actual and constructive notice of Krister's 2008 deed to Denali Trust when it made its second loan to Lillian; and, again, (3) that he had adversely possessed the property. FNBA did not oppose Krister's addition of a fraud in the factum claim, but it asked that Krister's second and third claims be denied because they were "identical to the original Complaint and should be resolved as a matter of law" on FNBA's pending motion for summary judgment.

FNBA then filed another summary judgment motion, asserting that it was a bona fide lender[6] with no notice of Krister's adverse claim to the property or Lillian's

---

[3] FNBA asserts that this complaint came "on the eve of the non-judicial foreclosure sale," which it then agreed to postpone, and that the sale still "remains to be held."

[4] The court initially consolidated Krister's case with the Office of Elder Fraud and Assistance's case against Lillian, but it decoupled the two cases again a year later. The state agency was not involved in the proceedings giving rise to this appeal.

[5] *See Kight v. Miller*, 94 N.E.3d 60, 70 (Ohio App. 2017); *Ackerman v. Ackerman*, 993 N.Y.S.2d 53, 55 (N.Y. App. Div. 2014).

[6] Generally speaking, a bona fide lender is one who acquires a security interest in property without actual or constructive notice of others' potentially adverse
(continued...)

alleged fraud in obtaining title. In opposition Krister contended that FNBA had constructive notice of his 2008 deed to Denali Trust because it would have discovered the deed had it conducted a "No Plat Subdivision Search" on the Department of Natural Resources' website. He also argued that FNBA had inquiry notice of possible fraud in Lillian's acquisition of title given multiple indicia of fraud associated with her 2010 loan application.

The court granted Krister's motion for leave to amend his complaint, but at the same time it granted FNBA summary judgment on Krister's adverse possession claim. A month later it granted FNBA summary judgment on the bona fide lender issue as well, concluding that FNBA lacked actual or constructive notice of any claims with priority over Lillian's interest in the property. Krister then filed his amended complaint, now limited to an assertion that Lillian had acquired her deed from Karin as a result of fraud and that Lillian's deed and conveyance to FNBA were therefore void.

FNBA moved for the entry of final judgment, asserting that all of Krister's claims had been resolved by the court's two summary judgment orders. FNBA also answered Krister's amended complaint, asserting that it was barred by the summary judgment orders and failed to assert a claim entitling him to relief. Krister opposed the entry of final judgment, arguing that his fraud in the factum claim remained to be litigated.

The superior court entered final judgment in favor of FNBA, invalidated and expunged Krister's lis pendens, and dismissed Krister's amended complaint with prejudice. Krister moved for reconsideration, which the superior court denied.

Krister appeals, arguing that the superior court erred by deciding FNBA

---

**6** (...continued)
interests in the same property. *See James v. McCombs*, 936 P.2d 520, 525 n.9 (Alaska 1997); *infra* note 12.

was a bona fide lender and by dismissing his amended complaint.

## III.  STANDARD OF REVIEW

"We review a grant of summary judgment de novo and will affirm the judgment if there are no contested issues of material fact and if the moving party is entitled to judgment as a matter of law."[7]  Whether someone is a bona fide lender is a question of law we review de novo.[8]  "We apply our independent judgment to questions of law, adopting 'the rule of law most persuasive in light of precedent, reason, and policy.' "[9]  "We review trial court decisions regarding motions to dismiss de novo, deeming all facts in the complaint true and provable."[10]

## IV.  DISCUSSION

### A.  It Was Not Error To Decide On Summary Judgment That FNBA Was A Bona Fide Lender.

The superior court concluded that FNBA had neither actual nor constructive notice of an adverse interest in the property and therefore was a bona fide lender with priority over any claim of Krister's.  "A bona fide purchaser is one who 'acquired title without notice, actual or constructive, of another's rights and also must have paid value

---

[7]      *Dunleavy v. Alaska Legis. Council*, 498 P.3d 608, 612 (Alaska 2021) (quoting *Alaskans for a Common Language, Inc. v. Kritz*, 170 P.3d 183, 189 (Alaska 2007)).

[8]      *See Watega v. Watega*, 143 P.3d 658, 664-65 (Alaska 2006) (holding that whether buyers "qualify as [bona fide purchasers] is a question of law to which we apply a de novo standard of review").

[9]      *Jacob v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 177 P.3d 1181, 1184 (Alaska 2008) (quoting *Guin v. Ha*, 591 P.2d 1281, 1284 n.6 (Alaska 1979)).

[10]      *Cath. Bishop of N. Alaska v. Does 1-6*, 141 P.3d 719, 722 (Alaska 2006) (internal citations omitted).

for the same' ";[11] the rules applicable to bona fide purchaser status apply equally to lenders.[12] Krister argues that FNBA had constructive notice of his 2008 deed to Denali Trust and inquiry notice of Lillian's potential fraud, and therefore it was error to grant summary judgment on this issue to FNBA. But we agree with the superior court's conclusion that FNBA was a bona fide lender.

### 1. FNBA had no notice of Krister's 2008 deed to Denali Trust.

Krister did not dispute the basic facts underlying the court's decision of FNBA's bona fide lender status on summary judgment: FNBA's first loan to Lillian, in April 2008, preceded Krister's purported conveyance of the property to Denali Trust in May of that year, and when FNBA conducted a title search before making its second loan to Lillian in 2010, it did not discover Krister's deed to Denali Trust because the deed was outside the chain of title. Nor did Krister dispute that FNBA's inquiry included not only a search for conveyances in the chain of title using Lillian's name, but also a tract search to locate all documents referencing the subdivision plat number since 1976. FNBA's

---

[11] *James v. McCombs*, 936 P.2d 520, 525 n.9 (Alaska 1997) (quoting *State v. 18,018 Square Feet, More or Less*, 621 P.2d 887, 890 n.5 (Alaska 1980)).

[12] *See, e.g.*, *S & H Packing & Sales Co., Inc. v. Tanimura Distrib., Inc.*, 883 F.3d 797 816 n.5 (9th Cir. 2018) (Ikuta, J., dissenting) (observing that "[a]lthough the Second Restatement [of Trusts] uses the term 'bona fide purchaser,' the term also applies when the trustee 'creates a legal interest' in trust property, § 284(1), such as by giving 'a legal mortgage or pledge . . . upon the trust property,' *id.* § 284 cmt. g"); *Wash. Mut. Bank v. Homan*, 974 A.2d 376, 390 (Md. Spec. App. 2009) ("Maryland cases have treated lenders who secure their interests with a mortgage or deed of trust as entitled to the protections available to bona fide purchasers for value, where such lenders were without notice of the mortgagor's fraudulent conduct."); *see also* AS 40.17.080(b) ("A conveyance of real property in the state . . . is void as against a subsequent innocent purchaser in good faith for valuable consideration of the property . . . whose conveyance is first recorded. . . . In this subsection, "purchaser" includes a holder of a consensual interest in real property that secures payment or performance of an obligation.").

inquiry did not reveal Krister's 2008 deed to Denali Trust because the deed did not contain the property's subdivision plat number.

A "buyer is only charged with 'constructive notice of all the facts which [it] might have learned by means of a due and reasonable inquiry.' "[13]   Alaska Statute 40.17.080(a) provides that "from the time a document is recorded in the records of the recording district in which land affected by it is located, the recorded document is constructive notice of the contents of the document to subsequent purchasers and holders of a security interest in the . . . property."  We held in *Sabo v. Horvath*, however, that a deed "recorded outside the chain of title[] does not give constructive notice to [a purchaser] and is not 'duly recorded' under the Alaskan Recording Act."[14]

Krister asserts that FNBA was nonetheless on constructive notice of the Denali Trust deed because a reasonable inquiry would have included a "no plat subdivision name" search of the Alaska Department of Natural Resources' searchable database, which according to Krister would have revealed the deed.  He contends that *Sabo* should not be controlling because it "was issued before any computerized record searches were available" and when "[s]earches were done by hand."  And he argues that given today's ease of electronic search, parties should be on constructive notice of deeds that can be found on the internet even if outside the chain of title.

We will overrule a prior decision only if we are "clearly convinced that the precedent is erroneous or no longer sound because of changed conditions, and that more

---

[13]   *Gottstein v. Kraft*, 274 P.3d 469, 477 (Alaska 2012) (quoting *Methonen v. Stone*, 941 P.2d 1248, 1252 n.5 (Alaska 1997)).

[14]   559 P.2d 1038, 1044 (Alaska 1976).

good than harm would result from overturning the case."[15]  While ease of information access has certainly improved since 1976 when we decided *Sabo*, Krister has not shown that more good than harm would result from overruling the case.  In *Sabo* we recognized that in circumstances of a double conveyance, "one or the other party . . . must suffer an undeserved loss."[16]  But we noted the importance of "promot[ing] simplicity and certainty in title transactions."[17]  We recognized that although the equities between purchasers and recorders outside the chain of title were "closely balanced," we nonetheless were required to "delineate the requirements of Alaska's recording laws."[18]  Promoting simplicity and certainty is still a sound rationale for ranking the rights of purchasers over those who record outside the chain of title.  We are not convinced that more good than harm would result from requiring that purchasers be on notice of everything they could uncover if they conducted every conceivable online search of state records.  *Sabo* remains good law, and a deed recorded outside the chain of title does not put a purchaser on constructive notice.

Krister does not argue that FNBA, if lacking constructive notice, had actual notice or inquiry notice of his 2008 deed to Denali Trust.[19]  We agree with the superior court's conclusion that FNBA had no notice of the deed that would affect FNBA's bona fide purchaser status.

---

[15]     *Kinegak v. State, Dep't of Corr.*, 129 P.3d 887, 889-90 (Alaska 2006).

[16]     559 P.2d at 1044.

[17]     *Id.*

[18]     *Id.*

[19]     *See Rosenberg v. Smidt*, 727 P.2d 778, 784 (Alaska 1986) (noting that cases generally interpret the phrase "[bona fide purchasers] without notice" "to apply to one who lacks actual, constructive (i.e., from the land records) or inquiry notice").

## 2. FNBA was not on notice of Lillian's potential fraud.

The superior court also found that FNBA "had no reason to suspect [Lillian] had obtained title to the property by fraud" and that Krister's "claims that the bank should have been on notice [of] fraud based on other details in the application is not probative as to whether or not the bank was on constructive notice." Krister asserts that FNBA was on inquiry notice of Lillian's potential fraud and the superior court erroneously limited its consideration to constructive notice.

Krister may be correct that the superior court should have analyzed issues of inquiry notice, but any error is harmless. "[W]e must disregard harmless errors that have no substantial effect on the rights of parties or on the outcome of the case."[20] And "[w]e may affirm the superior court on any basis supported by the record, even if that basis was not considered by the court below or advanced by any party."[21]

The doctrine of inquiry notice provides that in "circumstances . . . which suggest outstanding equities in third parties," there is "a duty upon the purchaser to make a reasonable investigation into the existence of a claim."[22] "[A] purchaser will be charged with notice of an interest adverse to his title when he is aware of facts which would lead a reasonably prudent person to a course of investigation which, properly executed, would lead to knowledge of the servitude."[23] And "[l]ack of diligence in the prosecution of a required inquiry creates a conclusive presumption of knowledge of

---

[20]    *Pedersen v. Blythe*, 292 P.3d 182, 184 (Alaska 2012); Alaska R. Civ. P. 61.

[21]    *Leahy v. Conant*, 436 P.3d 1039, 1043 (Alaska 2019) (quoting *Brandner v. Pease*, 361 P.3d 915, 920 (Alaska 2015)).

[22]    *Modrok v. Marshall*, 523 P.2d 172, 174 (Alaska 1974).

[23]    *Methonen v. Stone*, 941 P.2d 1248, 1252 (Alaska 1997).

those facts which reasonable inquiry would have revealed."[24]

In opposition to summary judgment, Krister listed seven indicia of fraud he believed should have prompted FNBA to investigate whether Lillian had obtained title fraudulently. Several of the indicia stem from two lease agreements Lillian submitted to FNBA in support of her 2010 loan application, which according to Krister misrepresented that the property was being rented. Both of the lease agreements lack lessee contact information and are filled out in similar handwriting, though purportedly by two different people. Although the lease agreements specify that utilities will be paid by the tenants, Lillian included "rental utility costs" for the two units in her loan application, and the costs were represented to be nearly identical. Finally, one of the two lease agreements is dated January 2008 even though Lillian did not acquire her quitclaim deed until April of that year. As additional indicia of fraud Krister notes that Lillian listed the property as an asset acquired in 2002 although her deed was from 2008; that Lillian wrongly listed herself as unmarried; that a credit report obtained by the bank noted a "fraud alert"; and that the credit report listed 13 aliases for Lillian, one of which was Karin Eriksson, her mother's name.

Krister argued that following up on these indicia should have "led FNBA to the duly recorded quitclaim deed for Denali Trust," and then, "[b]eing on notice, FNBA could have stopped the loan and [done] further inquiry." But Krister does not explain why the alleged irregularities in the loan application "suggest outstanding equities in third parties" such that a duty to reasonably investigate would be triggered.[25] We conclude that the chain connecting Lillian's loan application to Krister's own deed, outside the chain of title, is too tenuous to support the imposition of a duty on a

---

[24] *Id.*

[25] *Modrok*, 523 P.2d at 174.

reasonably prudent lender to inquire further about the existence of third-party claims. The superior court did not err by granting FNBA summary judgment on this issue.

**B.     It Was Error To Dismiss The First Amended Complaint's Claim Of Fraud In The Factum.**

The superior court dismissed Krister's first amended complaint, including its claim for fraud in the factum, after granting summary judgment on his adverse possession and bona fide lender claims. The court did not address the fraud claim explicitly, presumably accepting FNBA's argument that its bona fide lender status resolved all of Krister's claims in the bank's favor.[26] Although we agree that FNBA was entitled to bona fide lender status, as explained above, this holding does not dispose of Krister's allegation of fraud in the factum, and it was error to dismiss it.

**1.     Property conveyances resulting from fraud in the factum are void.**

Fraud in the factum — also known as fraud in the execution — "occurs when 'the promisor is deceived as to the nature of his act, and actually does not know what he is signing, or does not intend to enter into a contract at all.' "[27] It "most often arises where some limitation — such as blindness, illness, or illiteracy — prevents a

---

[26]     *See SMJ Gen. Constr., Inc. v. Jet Com. Constr., LLC*, 440 P.3d 210, 213 (Alaska 2019) (noting that where superior court failed to explain its reasoning for granting motion to dismiss, "we assume the court adopted [the moving party's] arguments for dismissal").

[27]     *Munoz v. Patel*, 297 Cal. Rptr. 3d 574, 585 (Cal. App. 2022) (quoting *Rosenthal v. Great W. Fin. Sec. Corp.*, 926 P.2d 1061, 1073 (Cal. 1996)); *Kight v. Miller*, 94 N.E.3d 60, 70 (Ohio App. 2017) (explaining that fraud in the factum "exists where the charging party engaged in some trick or device to procure the signature of the party to be charged on an instrument which she did not intend to give, such as where there is a surreptitious substitution of one paper for another at signing," or "misreading a contract to an illiterate party or obtaining a signature from a party under anesthesia").

party from reading or understanding a contract he or she is about to sign."[28] Fraud in the factum differs from the more common fraud in the inducement. While fraud in the inducement generally refers to a misrepresentation of the transaction's "risks, duties, or obligations," fraud in the factum generally refers to a misrepresentation of the "essential nature" of the document being signed.[29]

The common law uniformly treats conveyances resulting from fraud in the factum differently from those resulting from fraud in the inducement. "[W]here the grantor knowingly executes the very instrument intended, but is induced to do so by some fraud in the treaty or by some fraudulent representation or pretense, the deed is merely voidable."[30] "However, where there is fraud in the factum, as where the grantor intends to execute one instrument but another is surreptitiously substituted in its place and the grantor is fraudulently made to sign, seal, and deliver an instrument different from that intended, such fraud in the factum renders the deed void."[31] Voidness is

---

[28] *Munoz*, 297 Cal. Rptr. 3d at 585; *see also Ackerman v. Ackerman*, 993 N.Y.S.2d 53, 55 (N.Y. App. Div. 2014) ("[G]enerally such a cause of action only arises if the signor is illiterate, blind, or not a speaker of the language in which the document is written.").

[29] *Suliveres v Commonwealth*, 865 N.E.2d 1086, 1090 (Mass. 2007) (first quoting *Frederico v. Brockton Credit Union*, 653 N.E.2d 607, 611 (Mass. App. 1995); and then quoting BLACK'S LAW DICTIONARY 686 (8th ed. 2004)).

[30] 26A C.J.S. *Deeds* § 153 (2022) (citing *Schiavon v. Arnaudo Brothers*, 100 Cal. Rptr. 2d 801 (Cal. App. 2000); *Lanier v. John L. Roper Lumber Co.*, 98 S.E. 593 (N.C. 1919)).

[31] *Id.* (citing *Erickson v. Bohne*, 279 P.2d 619 (Cal. Dist. App. 1955); *Perfect Place, LLC v. Semler*, 426 P.3d 325 (Colo. 2018); *Delsas ex rel. Delsas v. Centex Home Equity Co., LLC*, 186 P.3d 141 (Colo. App. 2008); *Hancock v. Kulana Partners, LLC*, 452 P.3d 371 (Haw. 2019); *Strother v. Shain*, 78 N.E.2d 495 (Mass. 1948); *Bank of Am., N.A. v. Adolphus*, 112 N.Y.S.3d 726 (N.Y. App. Div. 2019)).

deemed the appropriate consequence because "[i]f a misrepresentation as to the character or essential terms of a proposed contract induces . . . assent by one who neither knows nor has reasonable opportunity to know of the character or essential terms of the proposed contract, [that person's assent] is not effective," and no contract is formed.[32]

Whether a conveyance is voidable or void is particularly important in the bona fide purchaser context. "[A] good faith purchaser may acquire good title to property if he takes it from one who obtained voidable title by misrepresentation but not if he takes it from one who obtained 'void title' by misrepresentation."[33] "A void deed is a nullity, and cannot be made the foundation of a good title even under the equitable doctrine of bona fide purchase."[34]

We have held in other contexts that void transfers implicate the rights of bona fide purchasers. In *Watega v. Watega* we explained that "if a [bona fide purchaser] purchases property at a voidable foreclosure sale, the trustor cannot later set aside the sale. If, by contrast, the sale was void rather than voidable, [bona fide purchaser] status is unavailable to confer protection."[35]

---

[32]     RESTATEMENT (SECOND) OF CONTRACTS § 163 (AM. L. INST., 1981).

[33]     *Id.* cmt. c.

[34]     26A C.J.S. *Deeds* § 151 (2022) (internal citation omitted) (citing *Perfect Place*, 426 P.3d 325; *CitiMortgage, Inc. v. Pantoja*, 111 N.Y.S.3d 584 (N.Y. App. Div. 2019); *Poag v. Flories*, 317 S.W.3d 820 (Tex. App. 2010); *Anadarko Land Corp. v. Fam. Tree Corp.*, 389 P.3d 1218 (Wyo. 2017); *In re Shelton*, 593 B.R. 755 (Bankr. N.D. Ohio 2018) (applying Alabama law); *Bryce v. O'Brien*, 55 P.2d 488 (Cal. 1936); *Cornell Univ. v. Howard*, 228 P.2d 680 (Kan. 1951); *Hoffer v. Crawford*, 65 N.W.2d 625 (N.D. 1954)).

[35]     143 P.3d 658, 665 (Alaska 2006) (internal citation omitted).

Citing our opinion in *Modrok v. Marshall*,[36] FNBA asserts, "Alaska law clearly establishes that when a prudent inquiry does not reveal facts that would charge a lender with notice of a possible claim of fraud implicating the propriety of its loan, that lender is entitled to protection from subsequent claims of fraud as a bona fide lender." In *Modrok* a divorced husband executed a quitclaim deed conveying the interest in the marital home to his ex-wife in the event he failed to sell the home within 30 days.[37] When there was no timely sale, the ex-wife executed a warranty deed conveying the home to a third party.[38] The divorced husband claimed that his ex-wife acquired title to the marital property through fraud and thus title to the property was at issue.[39] We noted that we had "difficulty discerning the substance of th[e] fraud" because "[t]he record . . . [was] unambiguous that [the divorced husband] agreed to sell the property or relinquish all claim of title in favor of his former wife at the end of thirty days."[40] Apparently, the divorced husband's claim was not that he had not meant to sign the quitclaim deed, but that his wife had used the deed to claim title when he thought she held it only as security.[41]

---

[36]    523 P.2d 172, 174-75 (Alaska 1974).

[37]    *Id.* at 173.

[38]    *Id.*

[39]    *Id.* at 174.

[40]    *Id.* at 175 n.5.

[41]    *Id.*

Because we concluded that the divorced husband understood the nature of the quitclaim deed he freely signed,[42] we had no occasion to explain the concept of fraud in the factum and its different consequences. And because the third party "[was] not chargeable with notice of a possible claim of fraud," its status as bona fide purchaser protected it from the divorced husband's claim.[43] We explained that if the ex-wife had "obtained [the deed] 'as a result of fraud and misrepresentation,' " as the ex-husband alleged, he was required to bring his claim against her, not the third party.[44] Our holding in *Modrok* is thus consistent with the principle that a bona fide purchaser is protected by a voidable deed, and the opinion does not address void deeds because the facts did not require us to make the distinction.

Consistent with the generally followed common law rule, we now hold that deeds conveyed as a result of fraud in the factum are void and confer no protection on even a bona fide purchaser or lender. Thus if Karin conveyed the property to Lillian in 2008 as a result of fraud in the factum, as Krister alleges, the deed is void, and FNBA's status as a bona fide lender does not protect its mortgage interest in the property.

### 2. Krister's allegations of fraud in the factum were sufficient to survive dismissal.

When reviewing an order of dismissal, we deem all facts in the complaint to be "true and provable."[45] Although Krister needed to allege facts consistent with some cause of action to survive a dismissal motion, his first amended complaint could be dismissed only if it appeared beyond a doubt that he could prove no set of facts that

---

[42] *Id.*

[43] *Id.* at 174-75.

[44] *Id.* at 175.

[45] *Cath. Bishop of N. Alaska v. Does 1-6*, 141 P.3d 719, 722 (Alaska 2006).

would entitle him to relief.[46]

Krister alleged that Karin had been diagnosed with "early dementia, and found to be experiencing confusion, delusions, and paranoia," that her native language was Swedish, and that she "never became proficient in reading English." He alleged that "Lillian exercised undue influence and fraudulently caused Karin to sign [the quitclaim deed to Lillian]," accomplishing it "by using her position of trust as a daughter" while knowing that "Karin could not read the quitclaim deed because Karin did not have her reading glasses and was unable to read without them," "could not . . . understand the true nature of the instrument in front of her because of her limited ability to read English," and "was incapable of comprehending the nature or impact of the document" "because of her diminished mental capacity."

These facts, if proven, are consistent with a claim that Lillian obtained her quitclaim deed from Karin as a result of fraud in the factum — that is, that Karin was unaware of the essential nature of the document she was signing. The superior court's dismissal of Krister's claim of fraud in the factum implied that FNBA's status as a bona fide lender protected it from that claim. But because a conveyance resulting from fraud in the factum is not merely voidable but void, FNBA's bona fide lender status is irrelevant to its defense against that claim. The dismissal of the fraud in the factum claim was therefore error.[47]

---

[46]     *Id.*

[47]     Krister also argues, "After Mat-Su Title LLC Insurance disclaimed any present or future interest in [the] property, the true owner of the property remains an unresolved material question of fact." Because we reverse on other grounds, and Krister failed to raise this argument before the superior court, we do not address it. *Adkins v. Collens*, 444 P.3d 187, 195 (Alaska 2019) ("Arguments raised for the first time on appeal are generally waived.").

## V. CONCLUSION

We AFFIRM the superior court's grant of summary judgment finding FNBA to be a bona fide lender. We REVERSE the dismissal of Krister's first amended complaint and REMAND for further proceedings consistent with this opinion.