NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JAE CHANG, | ) | |
| | ) | Supreme Court No. S-17827 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-18-10823 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| JUNGMOK RHEE and UKYUNG LEE, | ) | AND JUDGMENT* |
| | ) | |
| Appellees. | ) | No. 1937 – December 7, 2022 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Gregory Miller, Judge.

Appearances: John C. Pharr, Law Offices of John C. Pharr, P.C., Anchorage, for Appellant. Kimberlee A. Colbo, Hughes White Colbo & Tervooren, LLC, Anchorage, for Appellees.

Before: Winfree, Chief Justice, Maassen and Borghesan, Justices. [Carney and Henderson, Justices, not participating.]

## I.     INTRODUCTION

A creditor made three successive loans to a couple. At the time of the first loan he recorded a document entitled "claim of lien," using a form intended for a mechanic's lien and asserting a security interest in the couple's home. The couple later

---

\*      Entered under Alaska Appellate Rule 214.

sold the home. A title search revealed the claim of lien, but the title agency assumed it was expired and did not pass the information on to the buyers.

The creditor sued the couple for breach of contract, alleging their failure to repay the three loans, and he sued the buyers to foreclose on his claimed lien. The court granted summary judgment to the buyers, concluding that they lacked prior notice of the creditor's claimed adverse interest and therefore were bona fide purchasers for value who had taken ownership of the home free of that interest.

The creditor appeals the summary judgment ruling. He argues that his claim of lien was in substance an equitable mortgage and that the buyers had constructive or inquiry notice of it, meaning that they cannot be bona fide purchasers. Assuming the existence of an equitable mortgage, we conclude that the buyers lacked constructive or inquiry notice of it. We therefore conclude that the buyers were bona fide purchasers and affirm the superior court's grant of summary judgment in their favor.

## II.   FACTS AND PROCEEDINGS

### A.   Facts

Between 2014 and 2016 Jae Chang made three loans to George and Hyeran Hunziker totaling $115,000. Each loan was secured by a promissory note stating that "[t]his loan is collateralized by" the Hunzikers' residence. At the time of the first loan, in February 2014, a document entitled "Claim of Lien" was recorded in the Anchorage recording office; the form used is intended for the recording of a mechanic's lien.[1] The document identifies Jae Chang and Suh Chang as "Lienholder," identifies George and Hyeran Hunziker as "Property Owner," and provides the street address and legal description of the Hunzikers' residence. The document, with the italicized words

---

[1]     Under AS 34.35.050, "[a] person has a lien . . . to secure the payment of the contract price if the person" has performed labor, provided materials or equipment, or performed services related to real property.

handwritten in, explains: "[I]n accordance with a contract with *George - Hyeran Hunziker* (Debtor) lienor furnished labor[,] services[,] or [m]aterials consisting of . . . *[l]oan of $40,000 to be paid in full by 2-12-15 made payable to Jae Chang - Suh Chang* on the following described real property" — followed by the Hunzikers' address. The document appears to be signed by the Hunzikers on the line for the lienor's signature and is notarized. No documents were recorded to reflect the Changs' later two loans to the Hunzikers, made in May 2015 and January 2016.

In April 2018 the Hunzikers conveyed their home to Jungmok Rhee and Ukyung Lee by warranty deed. A title insurance company conducted a title search before the sale, but the resulting title insurance policy does not mention the recorded claim of lien. Rhee and Lee recorded a deed of trust in May 2018.

## B.     Proceedings

In November 2018 Chang filed suit against the Hunzikers for breach of contract and against Rhee and Lee for "Foreclosure of Equitable Mortgage."[2] Chang also asked that the house payments Rhee and Lee were making to the Hunzikers be placed in a constructive trust. In their answer the Hunzikers admitted they had received the loans and had "secured [the] notes against [their residence]."

Some discovery took place, much of it focused on the Hunzikers' loan payments. In their initial disclosures the Hunzikers admitted that Chang had recorded

---

[2]     "An 'equitable mortgage' is a lien upon property to secure payment of money that lacks the essential features of a legal mortgage, either because it grows out of a transaction between the parties without any deed or express contract to give a lien or because the instrument used for that purpose is lacking some of the characteristics of a common law mortgage. . . . Generally, where an instrument intended to operate as a mortgage fails as a legal mortgage because of some defect or infirmity in its execution, an equitable mortgage may be recognized, with priority over judgments subsequently obtained." 59 C.J.S. *Mortgages* § 32 (2022).

a lien on their home to secure the first loan, but they asserted their "position that they had made all payments to satisfy the first loan of $40,000 and therefore they were able to [sell] their home." In a later response to an interrogatory asking why the Hunzikers did not disclose Chang's claim of lien to Rhee and Lee, George Hunziker responded, "I was told that there are no liens on the property by the title company," and "I thought that because I was making the payments that there was not a lien." In a later affidavit he asserted there was a genuine issue of material fact regarding which loans the parties intended the Hunzikers' payments to go toward; according to George Hunziker, all payments went to the first loan until it was wholly paid off.

Rhee and Lee moved for summary judgment on the foreclosure claim. They asserted that they were not informed of the promissory notes when they purchased the home and were not aware of the claim of lien because their title insurer had not identified it, presumably interpreting the lien as being expired and therefore unenforceable.[3] They argued that they lacked actual, constructive, or inquiry notice of Chang's claim of lien and thus were bona fide purchasers for value who took the Hunzikers' house free and clear of Chang's alleged interest in the property.[4] Rhee and Lee also argued that Chang should have extended the lien, filed suit, or recorded a lis

---

[3]    A mechanic's lien generally expires six months after recording. AS 34.35.080. The claim of lien form at issue here stated a recording date of February 13, 2014 and a payment due date of February 12, 2015. Rhee and Lee purchased the home on May 2, 2018. Rhee and Lee's Memorandum in Support of their Motion for Summary Judgment is not entirely clear as to whether they are asserting that the title company read the lien as expired under AS 34.35.080 or by the terms of the claim of lien form. But under either theory, if considered to be a mechanic's lien, the claim of lien's expiration date was long past.

[4]    *See* AS 40.17.080(b) ("A conveyance of real property . . . is void as against a subsequent innocent purchaser in good faith for valuable consideration . . . whose conveyance is first recorded.").

pendens to give notice to subsequent purchasers that he had a continuing claim to the property.[5]  They requested an evidentiary hearing to address their status as bona fide purchasers.

In response, Chang argued that the recorded claim of lien unambiguously encumbered the property and that Rhee and Lee were at the very least on inquiry notice of the lien, as nothing had been recorded to indicate that it had been satisfied.  Chang argued that this inquiry notice was sufficient to give his interest in the home priority over that of Rhee and Lee.

The superior court granted Rhee and Lee's motion for summary judgment, concluding that they were bona fide purchasers protected from Chang's claim of lien.  The court also granted in part Chang's motion to impose a constructive trust on Rhee and Lee's house payments to the Hunzikers during the pendency of Chang's dispute with the Hunzikers over the unpaid loans, though the court emphasized that creation of the trust was "in no way to be deemed a finding that Rhee or Lee have done anything wrong."  The court then entered an Alaska Civil Rule 54(b) partial final judgment in Rhee and Lee's favor.  Chang appeals the grant of summary judgment on his equitable mortgage foreclosure claim.

III.  STANDARD OF REVIEW

We review a grant of summary judgment de novo, "drawing all factual inferences in favor of, and viewing the facts in the light most favorable to[,] the non-

---

[5]  A lis pendens is "[a] notice, recorded in the chain of title to real property, . . . to warn all persons that certain property is the subject matter of litigation, and that any interests acquired during the pendency of the suit are subject to its outcome."  *Lis Pendens*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see also* AS 09.45.940 (allowing recording of lis pendens to give constructive notice to others of pending legal action regarding real property).

prevailing party.'"[6] "We will affirm a grant of summary judgment if there are no genuine issues of material fact and the prevailing party was entitled to judgment as a matter of law."[7] When "the superior court granted summary judgment without articulating its reasoning, we examine all grounds on which the movant . . . relied to determine if any were sufficient."[8]

## IV. DISCUSSION

Like the superior court, we conclude that the determinative issue is whether Rhee and Lee had notice of Chang's claimed equitable mortgage on the Hunzikers' property at the time of its sale;[9] if they did not, then they are bona fide purchasers for value who take title free of any prior interest.[10] We agree with the superior court's conclusion that Rhee and Lee are bona fide purchasers.

### A. We Assume The Existence Of An Equitable Mortgage.

Because the superior court decided the case on the ground that Rhee and Lee lacked the required notice of Chang's claim of lien, it did not need to decide whether Chang held an equitable mortgage encumbering the Hunzikers' residence at the time of its sale; that is, no matter how Chang's interest was characterized, in the superior court's view Rhee and Lee lacked the requisite notice of it. Rhee and Lee argue that because Chang's equitable mortgage claim relies on his mistaken use of a form intended for

---

[6] *Rockstad v. Erikson*, 113 P.3d 1215, 1219 (Alaska 2005).

[7] *Young v. Embley*, 143 P.3d 936, 940 (Alaska 2006).

[8] *Id.*

[9] *See* AS 40.17.080(b) (providing unrecorded interest "is valid as between the parties to it and as against one who has actual notice of it").

[10] *See id.* (providing unrecorded interest "is void as against a subsequent innocent purchaser . . . whose conveyance is first recorded").

mechanic's liens, Chang lacked any valid interest in the property whatsoever, and we can decide the case on that basis. We reject this argument; we conclude there is enough evidence of an equitable mortgage that we will assume one existed for purposes of deciding the notice issue.

"An equitable mortgage is '[a] transaction that has the intent but not the form of a mortgage, and that a court of equity will treat as a mortgage.' "[11] It "arises from an agreement that both identifies property and evidences an intention that such property serve as security for an obligation."[12] "In determining the intent of the parties [we] look[] to the written contract as well as extrinsic evidence regarding the parties' intent at the time the contract was made."[13]

The substance of Chang's claim of lien lends some support to his argument that he holds an equitable mortgage. The handwritten insertions on the form indicate the parties' intent that the "property serve as security for an obligation."[14] This reflects the agreement of both Chang and the Hunzikers — in each of the three promissory notes — that each loan was "collateralized by" the Hunzikers' home. And in their answer the Hunzikers admitted the allegation that they "secured these notes against [their] single-family residence." Their later statements of position are less clear: In their initial disclosures they admitted that the first loan was secured by a lien on their home, and answering an interrogatory George Hunziker explained that they did not tell Rhee and

---

[11]    *Allen v. Vaughn*, 161 P.3d 1209, 1214 n.22 (Alaska 2007) (alteration in original) (quoting *Equitable Mortgage*, BLACK'S LAW DICTIONARY (8th ed. 2004)).

[12]    *Young*, 143 P.3d at 947 (quoting *Queen of the North, Inc. v. LeGrue*, 582 P.2d 144, 149-50 (Alaska 1978)).

[13]    *Muni. of Anchorage v. Gentile*, 922 P.2d 248, 256 (Alaska 1996).

[14]    *See Young*, 143 P.3d at 947 (quoting *LeGrue*, 582 P.2d at 149-50).

Lee about the promissory notes because they "thought that because [they were] making the payments . . . there was not a lien."

Ultimately, there appear to be genuine issues of material fact as to whether Chang holds an equitable mortgage interest in the property now owned by Rhee and Lee. We therefore assume in the section that follows that the equitable mortgage existed. The determinative question is whether Rhee and Lee lacked the requisite notice of the equitable mortgage and were therefore bona fide purchasers.

**B.     Rhee And Lee Lacked Constructive Notice Of An Equitable Mortgage.**

Bona fide purchasers for value take property free of prior adverse interests.[15] "In order to be a [bona fide purchaser for value], one claiming the status must have 'acquired title without notice, actual or constructive, of another's rights and also must have paid value for the same.' "[16] It is undisputed that Rhee and Lee paid value for the Hunzikers' house, but the parties dispute whether Rhee and Lee were on notice of Chang's claim of lien. We recognize three categories of notice relevant here: constructive notice, actual notice, and inquiry notice.

Alaska Statute 40.17.080(a) provides that a properly "recorded document is constructive notice of the contents of the document to subsequent purchasers and holders of a security interest in the same property or a part of the property."[17] Rhee and

---

[15]     AS 40.17.080(b).

[16]     *Watega v. Watega*, 143 P.3d 658, 665 (Alaska 2006) (quoting *James v. McCombs*, 936 P.2d 520, 525 n.9 (Alaska 1997)).

[17]     Whether a document provides constructive notice is a legal question. *Cf. Ranes & Shine, LLC v. MacDonald Miller Alaska, Inc.*, 355 P.3d 503, 509 (Alaska 2015) ("Whether a [Uniform Commercial Code] financing statement provides constructive notice of the elements of a claim for statute of limitations purposes is a question of law that we review de novo.").

Lee concede that Chang recorded his claim of lien; the document itself reflects that it was properly recorded at the recording office in Anchorage, where the property is located. But the constructive notice imposed by statute is only notice of "the contents of the [recorded] document." The "recorded document" — Chang's claim of lien — identified the parties, the subject property, and the debt: "Loan of $40,000 to be paid in full by 2-12-15 . . . ." It does not indicate that it may cover additional debts or that it may remain in force after the identified loan has been "paid in full." The reasonable implication, in fact, is to the contrary. If viewed consistent with its form as a mechanic's lien, the claim of lien expired six months after it was recorded unless Chang had filed suit in the meantime to enforce it.[18]

"The contents of the document" that Chang recorded thus fail to give constructive notice of an existing equitable mortgage because the claim of lien was not itself the equitable mortgage; it was, at most, *evidence* of an equitable mortgage, the existence, duration, and other terms of which had to be determined in part by reference to extrinsic evidence of Chang's and the Hunzikers' intent.

C. **Rhee And Lee Lacked Actual Or Inquiry Notice Of An Equitable Mortgage.**

Alaska Statute 40.17.080(b) provides in relevant part that "[a]n unrecorded conveyance is valid as between the parties to it and as against one who has actual notice of it." We have previously interpreted this statute to encompass "the common law doctrine[] of . . . inquiry notice."[19] We must therefore consider next whether Rhee and Lee had either actual or inquiry notice of Chang's asserted equitable mortgage.

---

[18] AS 34.35.080(a).

[19] *Methonen v. Stone*, 941 P.2d 1248, 1251 n.4 (Alaska 1997).

Whether a party received actual notice is a question of fact.[20] On summary judgment, to show that they lacked actual notice of Chang's claimed interest, Rhee and Lee relied on the Hunzikers' admission that they did not disclose the claim of lien and on the title company's failure to identify it in the title insurance policy. Chang made no showing in response "that he could produce evidence reasonably tending to dispute" the lack of actual notice.[21] We therefore agree with the superior court's conclusion that Rhee and Lee did not have actual notice of an equitable mortgage.

Next we turn to inquiry notice. The doctrine of inquiry notice provides "that a purchaser will be charged with notice of an interest adverse to his title when he is aware of facts which would lead a reasonably prudent person to a course of investigation which, properly executed, would lead to knowledge of the servitude."[22] "Lack of diligence in the prosecution of a required inquiry creates a conclusive presumption of knowledge of those facts which reasonable inquiry would have revealed."[23] We conclude that Rhee and Lee were not actually "aware of facts which would lead a reasonably prudent person to a course of investigation which, properly executed, would lead to knowledge of the servitude."[24] They had constructive notice that the recorded claim of lien was long expired, if viewed as a mechanic's lien, and that the

---

[20]    *See In re Est. of Evans*, 901 P.2d 1138, 1142-43 (Alaska 1995).

[21]    *Christensen v. Alaska Sales & Serv., Inc.*, 335 P.3d 514, 517 (Alaska 2014) (quoting *State, Dep't of Highways v. Green*, 586 P.2d 595, 606 n.32 (Alaska 1978)).

[22]    *Methonen*, 941 P.2d at 1252; *see also Modrok v. Marshall*, 523 P.2d 172, 174 (Alaska 1974) ("It is a settled rule of property that circumstances . . . which suggest outstanding equities in third parties[] impose a duty upon the purchaser to make a reasonable investigation into the existence of a claim.").

[23]    *Methonen*, 941 P.2d at 1252.

[24]    *Id.*

debt secured by the claim had a pay-off date over three years earlier. No facts revealed by the claim of lien indicated a still-existing lien.

The facts in this case stand in contrast to the facts in *Methonen v. Stone*, in which we identified a genuine issue of material fact regarding whether a purchaser should be charged with inquiry notice of an existing servitude.[25] At issue in *Methonen* was whether a landowner had inquiry notice of his obligation to maintain a community well-water system.[26] The original subdividers had dug a well on one lot, Lot 10, that supplied water to adjoining lots.[27] After several years and intervening owners, Lot 10 was sold to Methonen.[28] After the purchase he claimed he was unaware of any obligation to maintain a neighborhood water system; his neighbors sued to enforce what they believed to be an easement for water.[29]

We first considered the relevant recorded documents and concluded that none of them gave Methonen either actual or constructive notice of a water easement.[30] We then considered inquiry notice. We held that this doctrine precluded summary judgment:

> The basis for our conclusion that genuine issues of material fact are presented by this record resides in the fact that at the time of his purchase of Lot 10, Methonen was aware of the existence of the well on the property and the water lines running from the well to the adjoining lots in the subdivision.

---

[25] *Id.* at 1252-53.

[26] *Id.* at 1249-50.

[27] *Id.*

[28] *Id.* at 1250.

[29] *Id.*

[30] *Id.* at 1249-51.

These facts are sufficient to place Methonen on inquiry notice as to the existence of the community water system agreement.[31]

We held that these facts obliged Methonen to undertake a reasonable inquiry, which should "[g]enerally . . . include a request for information from those reasonably believed to hold an adverse interest."[32]

There is nothing in the record of this case analogous to the facts of which Methonen was actually "aware": the well and water lines running to the neighboring lots.[33] Rhee and Lee were not actually aware of any facts that would prompt a reasonable inquiry, and their constructive notice was limited to the contents of the recorded claim of lien. We conclude that what they knew was not sufficient to prompt "a reasonably prudent person to a course of investigation which, properly executed, would lead to knowledge of the servitude."[34]

In *First National Bank of Anchorage v. Dent*[35] we held that a recorded mechanic's lien was sufficient to put a reasonable person upon inquiry notice of whether the lien was still in effect, but our holding was not based on the existence of the recorded

---

[31]     *Id.* at 1252.

[32]     *Id.*

[33]     This case is also distinguishable from other cases in which we have found inquiry notice. *See, e.g.*, *Modrok v. Marshall*, 523 P.2d 172, 174-75 (Alaska 1974) (noting existence of "suspicious facts" where prior owner continued to occupy property and purchase price was well below appraisal value); *cf. Rosenberg v. Smidt*, 727 P.2d 778, 784-85 (Alaska 1986) (holding that purchasers were not on inquiry notice based on interested party's absence from foreclosure sale).

[34]     *Methonen*, 941 P. 2d at 1252.

[35]     683 P.2d 722 (Alaska 1984).

document alone.[36] We held "that the existence of the mechanic's lien notice on the land record, *in light of AS 34.35.080*, was sufficient to put a reasonable person upon inquiry notice."[37] We explained that "the language of AS 34.35.080, stating that the lien expires after six months 'unless suit is brought before the proper court to enforce the lien, . . . ' necessarily implies that the lien may still be valid, provided a lawsuit has been brought to enforce it."[38] But in *Dent* reasonable inquiry would have uncovered the existence of a lawsuit to enforce the lien;[39] here it would not have, and a failure to investigate does not affect bona fide purchaser status if a reasonable investigation would not have uncovered an adverse interest.[40]

By law, Rhee and Lee had constructive notice of the contents of Chang's claim of lien, which was, at most, *evidence* of an equitable mortgage that depended for its existence on extrinsic evidence of Chang's and the Hunzikers' intent. Rhee and Lee had no actual notice of the equitable mortgage itself, and the contents of the claim of lien, standing alone, did not prompt them to inquire further. Because they acquired title to the Hunzikers' home without notice of Chang's claimed equitable mortgage, we agree with the superior court that Rhee and Lee are bona fide purchasers for value.

---

[36]     *Id.* at 724.

[37]     *Id.* (emphasis added).

[38]     *Id.*

[39]     *Id.* ("Since the bank had a duty to inquire and would have discovered the existence of Dent's lawsuit if it had done so with reasonable diligence, the bank had inquiry notice of Dent's mechanic's lien.").

[40]     *Cf. Gottstein v. Kraft*, 274 P.3d 469, 477 (Alaska 2012) (holding that a purchaser who fails to investigate at all may still have bona fide purchaser status if it is apparent that a reasonable investigation would have uncovered only an "ineffective" assertion of adverse interest in the property).

## V.    CONCLUSION

We AFFIRM the judgment of the superior court.